Cite as 2025 Ark. App. 361

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-24-794

| | | |
|---|---|---|
| KEJUAN J. THOMPSON | | Opinion Delivered June 4, 2025 |
| | APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR-22-555] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE L. WREN AUTREY, |
| | APPELLEE | JUDGE |
| | | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**ROBERT J. GLADWIN, Judge**

Appellant Kejuan J. Thompson appeals the Miller County Circuit Court's order revoking his probation in case No. 46CR-22-555 and sentencing him to six years in the Arkansas Division of Correction for his terroristic-threatening conviction. Thompson's counsel filed a motion to withdraw and no-merit brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Rule 4-3(b) (2024) of the Arkansas Rules of the Supreme Court and Court of Appeals, asserting that there is no arguable claim to raise on appeal. Thompson was provided a copy of his counsel's brief and motion, but he did not file any pro se points for reversal; thus, the State did not file a responsive brief.

From our review of the record and the brief presented, we hold that counsel's brief is in compliance with the directives of *Anders* and Rule 4-3(b)(1) and that there are no issues of

arguable merit to support an appeal. Accordingly, we affirm the revocation of Thompson's probation and grant counsel's motion to withdraw. This is a companion case to *Thompson v. State*, 2025 Ark. App. 360, also handed down today.

## I. *Background Facts*

Thompson pled guilty to the offense of terroristic threatening, a Class D felony, and was placed on probation for twenty-four months and ordered to pay fines and costs in case No. 46CR-22-555. Additionally, Thompson pled guilty to the offense of aggravated assault, also a Class D felony, and was placed on probation for forty-eight months and ordered to pay fines and costs in case No. 46CR-23-190. Both sentencing orders were entered on May 4, 2023.

The State filed petitions to revoke his two probationary sentences for committing a new offense, failing to abstain from illegal drugs, failing to report, and failing to pay fines and costs. Thompson was served with the arrest warrant and taken into police custody on September 6, 2024. The circuit court held a revocation hearing on September 17 to address both petitions to revoke.

At the hearing, the State called two witnesses: Teresa Atkins, Thompson's parole officer; and Sergeant Jeremy Hendrix, the officer in charge of the scene of a crime that led to Thompson's arrest. Ms. Atkins testified regarding Thompson being charged with a new crime (possession of a firearm by certain persons), his failure to abstain from illegal drugs, his failure to pay court-ordered fines and costs, and his failure to report on several occasions.

Sergeant Hendrix testified that he was called to the scene of a robbery. Hendrix testified that he spoke with officers already present on the scene—to which Thompson objected on hearsay grounds. Sergeant Hendrix testified that as he was leaving the scene of the robbery, he was flagged down by Allison Parks, who claimed to be Thompson's girlfriend, and she specifically asked Hendrix if he arrested "Kejuan." Another hearsay objection was lodged concerning the identification of a backpack found at the scene of the robbery. Specifically, Sergeant Hendrix testified that Ms. Parks was shown a photograph of the backpack, and she, over objection, identified it as belonging to Thompson.

After the State rested, Thompson moved for a directed verdict and argued that the State failed to set forth any evidence that he pointed a gun at anyone and challenged the lack of testimony concerning his being in possession of a firearm. Counsel for Thompson stated he was not arguing that the State had not met its burden of proof on the other probation violations. The circuit court held that the State had made a prima facie case on the possession-of-a-firearm charge.

Thompson called a single witness, Tamika Dennis, his mother, to testify. Ms. Dennis testified that due to Thompson's disability—mood disorder and oppositional-defiant disorder—she handled his money and paid his bills. She stated that Thompson had been on disability since he was six or seven, but the disability payments stopped when Thompson was "locked up" and could not see the doctor in May 2024. Ms. Dennis testified that Thompson's disability payments of $914 a month went toward rent and utilities and that she paid what she could to "Bi-State."

3

Furthermore, Ms. Dennis testified that the "gun situation is her stuff," referring to Ms. Parks. She also testified that she received a backpack from Miller County—when she retrieved Thompson's property—and the backpack had someone else's initials and inside was a phone, charger cords, and papers that did not belong to Thompson. However, Thompson's wallet was inside the backpack. Ms. Dennis testified that she had never known Thompon to own a backpack. Moreover, Ms. Dennis testified that she handled Thompson's money, and he would not have had extra funds to purchase a backpack without her knowledge. She maintained that she drove Thompson to report to his probation officer when she could and that Thompson could get a job, but due to his physical and mental problems, he "can't do much."

The circuit court held that the State proved by a preponderance of the evidence that Thompson was in possession of a firearm. The court stated that the testimony regarding a firearm being involved with the robbery was concerning in light of Thompson's prior guilty pleas to terroristic threatening and aggravated assault. The court also found that there was no argument that Thompson did not test positive for marijuana and that he failed to report a least two times to his probation officer. The court noted that Thompson could have ridden the bus or walked at some point to report. Accordingly, the court revoked Thompson's probation in both cases, and he was sentenced to six years on the terroristic-threatening conviction and six years for the aggravated-assault conviction, to run consecutively. Thompson timely filed his notice of appeal in both cases.

4

## II. *Standard of Review*

Because this is a no-merit appeal, Rule 4-3(b)(1) requires the argument section of the brief to contain "a list of all rulings adverse to the defendant made by the circuit court on all objections, motions[,] and requests . . . with an explanation as to why each . . . is not a meritorious ground for reversal." The requirement for briefing every adverse ruling ensures that the due-process concerns in *Anders* are met and prevents the unnecessary risk of a deficient *Anders* brief resulting in an incorrect decision on counsel's motion to withdraw. *Harvey v. State*, 2022 Ark. App. 283, at 5, 646 S.W.3d 292, 295. Pursuant to *Anders*, this court is required to determine whether the case is wholly frivolous after a full examination of all the proceedings. *Id.*

## III. *Discussion*

Thompson's counsel identifies the adverse rulings as follows: (1) the revocation of his probation; (2) the circuit court overruling hearsay objections to the State's questioning Sergeant Hendrix about what officers on the scene relayed to him about the robbery; (3) the court overruling a hearsay objection to Sergeant Hendrix's testimony regarding what he was told by a witness about Thompson's leaving personal property at the scene of the alleged robbery; (4) the court's overruling Thompson's objection based on a Confrontation Clause argument; (5) the court's overruling, in part, Thompson's objection to speculation regarding why a witness terminated her testimony about seeing Thompson with a gun; and (6) the denial of his directed-verdict motions.

In revocation proceedings, the State has the burden of proving by a preponderance of the evidence that a defendant violated the terms of his or her suspended sentence as alleged in the revocation petition, and this court will not reverse the circuit court's decision to revoke a suspended sentence unless it is clearly against the preponderance of the evidence. *Mathis v. State*, 2021 Ark. App. 49, at 3, 616 S.W.3d 274, 277. The State need only show that the appellant committed one violation to sustain a revocation. *Id.*; *see also* Ark. Code Ann. § 16-93-308(d) (Supp. 2023). Because the determination of a preponderance of the evidence turns on questions of credibility and the weight to be given testimony, appellate courts defer to the circuit court's superior position for assessing these factors. *Brown v. State*, 2014 Ark. App. 612, at 2.

In his no-merit brief, counsel accurately explains that there can be no meritorious challenge to the sufficiency of the evidence supporting Thompson's revocation. The circuit court found that Thompson had violated multiple conditions of his probation, and the evidence regarding those violations—that Thompson failed to report to his probation officer, failed a drug test, and failed to comply with the payment obligations placed upon him at sentencing—was uncontroverted. Furthermore, we need not discuss the adverse rulings involving hearsay objections and Thompson's confrontation-clause argument because they all relate to Sergeant Hendrix's testimony regarding a robbery that resulted in Thompson's being charged with a new criminal offense. Because Thompson's probation was revoked in both cases for other undisputed violations, any error, in overruling Thompson's objections to Sergeant Hendrix's testimony would be harmless since the State is required to prove by a

6

preponderance of the evidence that Thompson committed only one violation of probation. *See Henderson v. State*, 2015 Ark. App. 411, at 5–6, 466 S.W.3d 418, 422.

## IV. *Conclusion*

Accordingly, from our review of the record and the brief presented to us, we find compliance with Rule 4-3(b); there is no issue of arguable merit to appeal. We affirm the revocation of Thompson's probation in case No. 46CR-22-555 and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

KLAPPENBACH, C.J., and TUCKER, J., agree.

*Phillip A. McGough, P.A.*, by: *Phillip A. McGough*, for appellant.

One brief only.